UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ONN RAPEIKA,

    *Plaintiff,*

v.

BOROUGH OF FORT LEE, et al.,

    *Defendants.*

Civil Action No. 19-6612

**OPINION**

**John Michael Vazquez, U.S.D.J.**

Plaintiff alleges that police officers improperly kept his personal property following a search. Defendants are the Borough of Fort Lee ("Fort Lee"), the Fort Lee Police Department, Keith M. Bendul, T.J. Cullen, Bryan Drumgoole, Officer Hernandez, Corban Cory Horton, Francis Pantaleo, Eddie Young, Officer Tilton, Gregory Boylan, and Matthew Hintze. Currently pending is Defendants' motion to dismiss. D.E. 3. Plaintiff filed a brief in opposition to the motion, D.E. 8, to which Defendants replied, D.E. 9. The Court reviewed the submissions made in support and opposition to the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).[1] For the reasons that follow, Defendants' motion is **GRANTED in part and DENIED in part.**

---

[1] Defendants' brief in support of their motion to dismiss, D.E. 3-2, will be referred to as "Def. Br."; Plaintiff's memorandum in opposition, D.E. 8, will be referred to as "Plf. Opp."; and Defendants' reply brief, D.E. 9, will be referred to as "Def. Reply".

## I. INTRODUCTION[2]

Plaintiff alleges that Bendul, Cullen, Drumgoole, Hernandez, Horton, Pantaleo, Young, Tilton, Boylan and Hintze (the "Individual Defendants") conspired to steal Plaintiff's personal property. The Individual Defendants, who are all members of the Fort Lee Police Department, purportedly knew that Plaintiff owned guns, traded Bitcoin and precious metals, owned expensive watches, and had cash and other valuable items in his apartment. Compl. ¶¶ 27-36. Plaintiff contends that the Individual Defendants arranged for a confidential informant to attempt to purchase marijuana from Plaintiff, and that Plaintiff sold the informant marijuana on two occasions. *Id.* ¶¶ 44-52. Based on these two transactions, the Individual Defendants obtained a search warrant for Plaintiff's apartment, and the following day, they obtained a second search warrant for Plaintiff's garage. *Id.* ¶¶ 54, 70. Plaintiff alleges that the initial search warrant for his apartment was improperly obtained. *Id.* ¶¶ 52-53, 111-41.

In executing the search warrant of Plaintiff's apartment, Hintze, Cullen, Horton, Drumgoole, Young, and Boylan found handguns, cash, rare coins, gold bullion, and three watches. *Id.* ¶ 59. Plaintiff alleges that the Individual Defendants failed to properly inventory all the items seized and have yet to return property even after Plaintiff's demands. Specifically, Plaintiff alleges that inventoried property was returned, with the exception of $14,000 over which forfeiture proceedings were instituted and are pending. *Id.* ¶¶ 61, 78-79. Yet, Plaintiff continues that while approximately $300,000 worth of property was returned, over $400,000 worth of property was illegally retained. *Id.* ¶ 85. As to the $14,000, Plaintiff asserts that he actually had over $40,000 in his apartment, but only $14,000 was inventoried. *Id.* ¶ 62. Among other items, Plaintiff alleges

---

[2] The facts are derived from Plaintiff's Complaint. D.E. 1. When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

2

that gold and silver bullion, rare coins, jewelry (including a Rolex and a Techno Marine watch), and over 1900 bitcoins were improperly taken. *Id.* ¶¶ 68-69.

On May 28, 2014, Plaintiff was indicted on 17 charges in state court. *Id.* ¶¶ 71-72. On March 1, 2018, Plaintiff pled guilty to one count of second-degree possession of an assault weapon. *Id.* ¶¶ 73-74. The remaining 16 counts of the indictment were subsequently dismissed. *Id.* ¶ 75. On April 27, 2018, Plaintiff was sentenced to five years of incarceration; he is currently serving his sentence. *Id.* ¶¶ 76-77.

Plaintiff filed the current matter against Defendants on February 22, 2019. D.E. 1. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983, state constitutional claims under the New Jersey Civil Rights Act ("NJCRA"), and three state-law based tort claims for negligence, conversion and conspiracy. Defendants filed their motion to dismiss on May 30, 2019. D.E. 3.

## II. LEGAL STANDARD

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's

3

well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

### III. ANALYSIS

#### A. Section 1983 and the New Jersey Civil Rights Act

In Counts One through Three, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 and the NJCRA against all Defendants. Section 1983, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To state a Section 1983 claim, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015).

The NJCRA provides a private cause of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A. 10:6-2. The "NJCRA was modeled after § 1983, [and so] courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly

4

construed the NJCRA in terms nearly identical to its federal counterpart." *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016) (internal quotations and citation omitted). Therefore, the Court considers Plaintiff's § 1983 and NJCRA claims together.

Here, Plaintiff alleges that Defendants violated his Fourth and Fourteenth Amendment rights. Moreover, Plaintiff's § 1983 allegations can be broken into two general categories; claims against Fort Lee and the Supervisory Defendants (Fort Lee, the Fort Lee Police Department, Bendul, and Hintze) and claims against the Individual Officer Defendants (Cullen, Drumgoole, Hernandez, Horton, Pantaleo, Young, Tilton and Boylan).

### 1. CLAIMS AGAINST FORT LEE[3] AND THE SUPERVISORY DEFENDANTS

Defendants argue that Plaintiff fails to state a *Monell* liability claim as to Fort Lee and the Supervisory Defendants in their official capacities.[4] Def. Br. at 5-7. A municipality cannot be liable under Section 1983 for the acts of its employees on the basis of *respondeat superior*. *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690-91 (1978)). Rather, to hold a municipality liable, a plaintiff must demonstrate that the violation of rights was caused by a municipal policy or custom. *Id.* "A plaintiff may show the existence of a policy when a decision-maker with final authority issues an official proclamation, policy, or edict." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J.

---

[3] Defendants argue that Plaintiff's claims against the Fort Lee Police Department must be dismissed because the Fort Lee Police Department is an improper Defendant. Def. Br. at 22. Plaintiff agrees to dismiss the Fort Lee Police Department as a Defendant in this matter because it is not a separate entity from Fort Lee. Plf. Opp. at 2. Accordingly, Defendants' motion to dismiss is granted as to the Fort Lee Police Department.

[4] In *Monell v. Dep't Soc. Servs. of N.Y.C.* "the Supreme Court established that municipalities and other government entities were 'persons' subject to liability under 42 U.S.C. § 1983." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (citing *Monell*, 436 U.S. 658, 690-92 (1978)).

2015) (internal quotations and citations omitted). "[A] custom may be established by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (internal quotations and citations omitted). Here, Plaintiff does not contend that a specific policy caused his injuries, and instead alleges that Fort Lee and the Supervisory Defendants failed to enact appropriate policies. Compl. ¶¶ 148, 150. Thus, it appears that Plaintiff is attempting to assert a *Monell* claim, at least in part, based on customs of the Fort Lee Police Department. But outside of conclusory allegations, Plaintiff fails to plead facts demonstrating that Fort Lee or the Supervisory Defendants were aware of a custom of improperly inventorying and returning seized property, or that there was a pattern of similar incidents that could amount to a custom. As a result, Plaintiff fails to sufficiently allege that a custom existed.

Plaintiff also alleges that Fort Lee and the Supervisory Defendants failed to train, supervise, and discipline officers. *Id.* ¶¶ 155-56. The Third Circuit recently clarified that a *Monell* claim may also be premised on a municipality's failure to train, supervise, and discipline. To plead such a claim, a plaintiff "must demonstrate that a city's failure to train its employees 'reflects a deliberate or conscious choice.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798, 800 (3d Cir. 2019) (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)). For claims involving police officers, the alleged failure can only serve as a basis for § 1983 liability where it "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is plausibly pled by showing that "(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of

6

constitutional rights." *Id.* (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)). Here, Plaintiff fails to sufficiently allege that there was a history within the Fort Lee Police Department of failing to properly inventory property found at crime scenes or to return such property. Thus, Plaintiff fails to plausibly plead deliberate indifference.[5]

Plaintiff argues that he need not plead facts demonstrating a long-standing pattern; rather a single incident may be sufficient to establish deliberate indifference. Plf. Opp. at 20. The Supreme Court has left open the "rare" possibility, that "in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 63-64 (2011). A single incident may be sufficient if the constitutional violation was an "obvious consequence" of the lack of training. *Id.* at 63. Without deciding the issue, the Supreme Court "posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force" as a potential example in which a pattern of past incidents may not be necessary. *Id.* at 63 (citing *Canton*, 489 U.S. at 390 n.10 (1989)). In *Connick*, however, the Supreme Court determined that the failure to train prosecutors on their obligations pursuant to *Brady* "does not fall within the narrow range of *Canton*'s hypothesized single-incident liability." *Id.* at 64. In reaching this conclusion, the Supreme Court highlighted the on-going training and professional obligations of attorneys. "In light of this regime of legal

---

[5] "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Plaintiff fails to establish that Hintze, the Individual Officer Defendants' immediate field supervisor, Compl. ¶¶ 5, 170, had any policymaking authority. As a result, Plaintiff's failure to supervise, train, and discipline claim is also dismissed as to Hintze on these grounds.

7

training and professional responsibility, recurring constitutional violations are not the 'obvious consequence' of failing to provide prosecutors with formal in-house training about how to obey the law." *Id.* (quoting *Bd. of Cty. Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997)).

Here, outside of conclusory allegations, Plaintiff fails to allege that the Individual Officer Defendants' failure to document, inventory, and return Plaintiff's property was caused by a lack of training. In addition, Plaintiff fails to establish that Fort Lee police officers will likely face similar situations as presented here with any frequency. *See Thomas*, 749 F.3d at 223 ("Liability in single-incident cases depends on the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights."). The Court, therefore, disagrees that the alleged single incident in this case sufficiently pleads deliberate indifference. Plaintiff's *Monell* claim is dismissed.

Plaintiff also brings claims against the Supervisory Defendants in their individual capacities. There are two cognizable theories of supervisory liability for Section 1983 claims. First, liability may be asserted against policymakers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused the constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)); *see also Chavarriaga v. N.J. Dept. of Corrs.*, 806 F.3d 210, 227 (3d Cir. 2015) (explaining that to establish § 1983 supervisory liability a plaintiff must "identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury"). As discussed with respect to the *Monell* claim, Plaintiff fails to sufficiently allege deliberate indifference as to the Supervisory Defendants.

Section 1983 liability against a supervisor may also exist if the supervisor was personally involved by either giving personal direction or having actual, contemporaneous knowledge of the wrongdoing and acquiescing to the violation. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiff alleges that Bendul and Hintze were personally involved in the alleged wrongdoing. Plaintiff alleges that both Bendul and Hintze knew Plaintiff from the pizzeria where Plaintiff worked and the shooting range, and knew about Plaintiff's guns, Bitcoin and watch collections, and bouillon investment activities. Compl. ¶¶ 37-38, 41-42. Plaintiff also alleges that Hintze was involved in the search of Plaintiff's apartment, *id.* ¶¶ 56-59, and knew of the scheme to not inventory and return all of the property seized, *id.* ¶¶ 66-67. Finally, Plaintiff pleads that three of the Individual Officer Defendants who were responsible for directly inventorying the property were supposed to log the items seized with Hintze. Plaintiff continues that Hintze failed to ensure that these officers properly inventoried and returned the property to Plaintiff. *Id.* ¶¶ 81-83.

As for Bendul, Plaintiff pleads that "Bendul was personally required to review reports, inventory, photos and evidence involving the raid, as well as to review the photographs taken of the raid." *Id.* ¶ 97. A "simple review" of these photos would, according to Plaintiff, establish that Plaintiff's property was not properly inventoried, yet Bendul failed to take any corrective action. *Id.* ¶¶ 98-99. Plaintiff further alleges that after he lodged a formal complaint with the Fort Lee Police Department for the return of his property, "upon information and belief, Bendul opened an Internal Affairs investigation." *Id.* ¶¶ 87-88. Plaintiff alleges that the investigation was never resolved and Bendul "refused to acknowledge that there was missing property despite Plaintiff's complaints." *Id.* ¶¶ 89-90. Plaintiff sufficiently alleges that Bendul and Hintze were personally involved in the alleged wrongdoing. As a result, the Court will consider the allegations as to

9

Bendul and Hintze below while addressing the claims asserted against the Individual Officer Defendants.

## 2. CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

### a. Fourth Amendment Violations

The parties focus on the validity of the warrant used to search Plaintiff's apartment and garage. Defendants argue that there was no constitutional violation because the search warrant and subsequent seizure were based on probable cause. Def. Br. at 8. Plaintiff counters that probable cause was lacking. Plf. Opp. at 26.

"The Fourth Amendment prohibits unreasonable searches and seizures." *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011). A search and seizure is generally reasonable pursuant to the Fourth Amendment if it is "effectuated with a warrant based on probable cause." *United States v. Bey*, 911 F.3d 139, 144-45 (3d Cir. 2018). A warrant passes Fourth Amendment scrutiny if "(1) it was issued by a neutral and detached magistrate; (2) it was based on a showing of 'probable cause' to believe that 'the evidence sought will aid in a particular apprehension or conviction for a particular offense,' and (3) it satisfies the particularity requirements." *United States v. Tutis*, 216 F. Supp. 3d 467, 477 (D.N.J. 2016) (quoting *Dalia v. United States*, 441 U.S. 238, 255 (1979)). Probable cause for a search warrant exists if there is "a 'fair probability' of criminal activity, based upon the totality of circumstances." *Id.* (quoting *United States v. Bond*, 581 F.3d 128, 139 (3d Cir. 2009)). A reviewing court, however, "must afford great deference to the probable cause finding of an issuing court," such that a probable cause finding should "be upheld so long as the supporting documents provided a substantial basis for the initial probable cause decision." *Id.*

As pled, there appears to have been probable cause for the search warrant. Plaintiff pleads

10

that Defendants suspected or knew that he occasionally smoked marijuana. Compl. ¶ 44. As a result, Defendants arranged for a confidential informant to purchase marijuana wax from Plaintiff on two occasions. *Id.* ¶¶ 45-51. Defendants Horton, Drumgoole, Young, and Cullen observed at least one of the transactions. *Id.* ¶¶ 48, 51. The two transactions provided probable cause for the search warrant. *Id.* ¶ 54. Eye-witness accounts of two drug transactions is more than sufficient to establish a fair probability of criminal activity.

Plaintiff counters that the search warrant "was improperly obtained and based on false information." *Id.* ¶ 54. Specifically, Plaintiff pleads that there is no record to establish that either sale actually occurred, *id.* ¶¶ 50, 52, and that the subsequent criminal drug charges were eventually dropped, *id.* ¶ 52. Plaintiff, however, never pleads that transactions did not actually occur. Accordingly, the Court disagrees with Plaintiff's argument.

Plaintiff also pleads that there were defects in the warrant such that the subsequent search violated his Fourth Amendment rights. *Id.* ¶¶ 111-41. Specifically, Plaintiff pleads that two search warrants were issued within ten minutes of each other. One was "free of overt defect" and the second, which had white-out and a handwritten edit to the time, was not initially provided to Plaintiff during discovery in the criminal matter. Plaintiff, however, concedes that the first warrant was "free of overt defect," *id.* ¶ 114, "appeared to be perfectly executed," *id.* ¶ 128, and that both warrants were "purportedly signed by Judge Jerejian," *id.* ¶ 121. Accordingly, the Complaint fails to establish that the search was conducted with a defective warrant.[6] Plaintiff, therefore, fails to

---

[6] Plaintiff's allegations as to the improper warrant as also implausible. Plaintiff surmises that there must be a problem with the warrant because on the second warrant, there was white-out over the time and the time "4:20" was handwritten onto the warrant. Plaintiff appears to believe that this is evidence of a conspiracy because 4:20 "is a street name for marijuana and the address number for the place to be searched." Compl. ¶ 130. Plaintiff also speculates that Judge Jerejian did not actually sign the warrant at 4:20 because the court regularly closes at 4:30 p.m. and when the warrant was signed, "Winter Storm Hercules was hammering the East Coast." *Id.* ¶¶ 131-32.

plead that his Fourth Amendment rights were violated.

### b. Failure to Intervene

In Count Two, Plaintiff asserts a § 1983 failure to intervene claim against all Defendants for their failure to stop other Defendants from improperly inventorying Plaintiff's property. Compl. ¶¶ 197-207. "A police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force." *Ewing v. Cumberland County*, 152 F. Supp. 3d 269, 309 (D.N.J. 2015). Plaintiff, however, does not allege that any of the Defendants used excessive force against him. Rather, Plaintiff alleges that Defendants should have intervened to ensure that his property was correctly inventoried and returned to him. But Plaintiff provides no legal authority indicating that a failure to intervene claim can exist outside the context of an excessive force claim. Without such authority, the Court dismisses the failure to intervene claim.

### c. Fourteen Amendment Due Process Claim

Plaintiff also pleads that his Fourteenth Amendment due process rights were violated as a result of Defendants' failure to inventory personal property seized during the search of his apartment and to return all of his property. *See, e.g.*, Compl. ¶¶ 182-94. Defendants argue that Plaintiff's Fourteenth Amendment due process claim must be dismissed because it is duplicative of his Fourth Amendment claims. Def. Br. at 7. But Plaintiff's due process claim is focused on a separate injury—the improper inventory of his property after the search. Compl. ¶ 144. In other words, even warrants were properly issued, this allegation concerns conduct following the search. Defendants' motion, therefore, is denied on these grounds.

Defendants also contend that Plaintiff's due process claim should be dismissed because

---

Plaintiff provides insufficient allegations to support his claims that the warrant was forged or created after the search occurred.

Plaintiff fails to allege that he was deprived due process. Def. Br. at 9. "When law enforcement agents seize property pursuant to a warrant, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." *City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999); *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 139 (3d Cir. 2010) (suggesting that due process claim for wrongful retention of properly seized personal property may exist to the extent that a plaintiff alleges that post-deprivation procedures were inadequate). In this instance, Plaintiff alleges that some, but not all, of his property was inventoried after the seizure, that certain property was returned, and that other property has not yet been returned despite Plaintiff's demands. Plaintiff's allegations sufficiently state a claim Fourteenth Amendment due process claim.

Defendants argue that even if a constitutional violation occurred, they cannot be liable because of the doctrine of qualified immunity. Def. Br. at 11-12. Qualified immunity "shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Independence Township*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996)). Because qualified immunity protects government agents from suit, it "should be resolved as early as possible." *Id.* The inquiry into qualified immunity, however, is fact intensive. Therefore, it is "generally ill-suited for resolution at the pleadings stage." *Janowski v. City of North Wildwood*, No. 16-4464, 2017 WL 1821078, at *4 (D.N.J. May 5, 2017) (quoting *Batiz v. Brown*, No. 12-581, 2013 WL 1137531, at *7 (D.N.J. Mar. 14, 2013)). "[Q]ualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Thomas*, 463 F.3d at 291 (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)).

13

In determining whether qualified immunity exists, a court must assess whether (1) the facts alleged by plaintiff show the violation of a constitutional right; and (2) the plaintiff's constitutional right was clearly established at the time of the violation. *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan,* 555 U.S. 223 (2009). Defendants' sole argument for dismissal on qualified immunity grounds is that no constitutional violation occurred. But as discussed, certain Individual Defendants allegedly violated Plaintiff's constitutional rights by failing to properly inventory and return Plaintiff's personal property.

While not raised by the parties, the Court briefly addresses whether the constitutional right was clearly established at the time of the violation. A right is clearly established if it would "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202; *see also Gaymon v. Esposito,* No. 11-4170, 2013 WL 4446973, at *5 (D.N.J. Aug. 16, 2013) ("[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (quoting *Wilson,* 526 U.S. at 615)). "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson,* 555 U.S. at 244 (quoting *Wilson v. Layne,* 526 U.S. 603, 614 (1999)). The obligation to inventory seized property and abide by post-deprivation procedures for the return of such property was clearly established when the search and seizure occurred here. *Perkins,* 525 U.S. at 240; *Revell,* 598 F.3d at 139. The Individual Defendants, therefore, are not entitled to qualified immunity as to Plaintiff's due process claim at this stage.

#### d. Section 1983 Conspiracy

In Count One, Plaintiff also pleads a conspiracy to violate his Fourth and Fourteenth Amendment rights. To state a § 1983 conspiracy, a plaintiff must allege facts showing that "persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018). Defendants contend that Plaintiff's conspiracy claim must be dismissed because Plaintiff fails to plead an underlying constitutional violation. Def. Br. at 10. As discussed, Plaintiff adequately pleads a Fourteenth Amendment due process claim. Accordingly, Plaintiff's conspiracy claim is not dismissed on this ground. *See Jutrowski*, 904 F.3d at 294 (explaining that with respect to a § 1983 conspiracy, the constitutional violation "include[s], of course, those protected by the Due Process Clause of the Fourteenth Amendment").

Defendants also seek to dismiss Plaintiff's conspiracy claim because he fails to provide factual support for his allegations as to the "understanding" between Defendants. Def. Br. at 30-31. The Court disagrees. An agreement or meeting of the minds may be established by circumstantial evidence, including "that the alleged conspirators did or said something to create an understanding, the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy." *Jutrowski*, 904 F.3d at 295. Plaintiff pleads that each Individual Defendant was aware of Plaintiff's Bitcoin and bouillon investment activities as well as his gun and watch collections. Compl. ¶¶ 18, 37-39, 41 The Complaint includes sufficient allegations through which the Court may infer that Defendants took concerted action to violate Plaintiff's constitutional rights. Plaintiff alleges that Horton, Drumgoole, and Cullen participated in the search and the inventory process. Plaintiff asserts that "[a]ccording to a police report," Cullen, Drumgoogle, and Horton "were responsible for directly

15

inventorying the property, labeling and logging it[.]" *Id.* ¶ 81. Plaintiff adds that it is clear that property is missing when comparing photographs of his apartment during the search and the inventory log. *Id.* ¶ 98. Plaintiff also alleges sufficient facts to infer that Bendul was involved in the conspiracy because he failed to return Plaintiff's property upon demand, and he did not reprimand or discipline any officers as to the missing items. Defendants' motion to dismiss the conspiracy claim, therefore, is denied.[7]

### B. STATE LAW TORT CLAIMS

#### 1. New Jersey Tort Claims Act

Plaintiff's Complaint also asserts three tort claims pursuant to New Jersey law. Defendants argue that they are immune from these claims pursuant to the New Jersey Tort Claims Act, N.J.S.A. 59:1-1, *et seq.* ("TCA"). Specifically, Defendants contend that Plaintiff's Notice of Claim is deficient because it only alleges negligence in failing to preserve and protect Plaintiff's seized property. As a result, Fort Lee was not put on notice as to all of Plaintiff's claims. Def. Br. at 14-18.

A party that asserts a tort claim seeking damages from a public entity or employee must comply with the TCA, which "establishes the procedures by which [such] claims may be brought." *D.D. v. Univ. of Med. & Dentistry of N.J.*, 213 N.J. 130, 146 (2013) (quoting *Beauchamp v. Amedio*, 164 N.J. 111, 116 (2000)). One requirement is that a plaintiff must file a notice of claim that, among other things provides "the date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and "[a] general description of the injury,

---

[7] Plaintiff asserts a § 1985 conspiracy claim in his Complaint. Plaintiff, however, agrees to dismiss his § 1985 conspiracy claim because it requires a discriminatory motive, which Plaintiff concedes he did not plead. Plf. Opp. at 2.

16

damage or loss incurred so far as it may be known at the time of presentation of the claim." N.J.S.A. 59:8-4. The TCA notice requirement, however, "is not intended as 'a trap for the unwary.'" *Lebron v. Sanchez*, 407 N.J. Super. 204, 215 (App. Div. 2009) (quoting *Lowe v. Zarghami*, 158 N.J. 606, 629 (1999)). Therefore, "substantial rather than strict compliance with the notice requirements of the Act may satisfactorily meet the statute's mandates." *Id.* In this instance, Plaintiff's notice of claim states that items seized pursuant to a search warrant "disappeared," that Defendants "failed to use due care in preserving and protecting seized property," and lists the missing property. Certification of Counsel, Ex. E, D.E. 3-8. The notice of claim adequately put Defendants on notice of Plaintiff's tort claims.[8]

Next, Defendants maintain that Fort Lee has immunity for Plaintiff's claim for negligence because Plaintiff's allegations arise from discretionary duties. Accordingly, Defendants contend that the negligence claim must be dismissed as to Fort Lee as a matter of law. Def. Br. at 17. Defendants provide no legal support for this argument. Generally, a public entity is immune from tort liability "unless there is a specific statutory provision imposing liability." *Kayrar v. Borough of Wallington*, 171 N.J. 3, 10 (2002). But "[t]he burden of proof in establishing the applicability of the immunities rests with the public entity." *Manna v. State*, 129 N.J. 341, 351 (1992). Because Defendants fail to provide any legal support to their argument as to Fort Lee's immunity, Defendants' motion is denied on these grounds.

As for Plaintiff's tort claims against the Individual Defendants, Defendants argue that they are immune from liability for the tort claims because they were acting pursuant to their discretionary duties and were acting in good faith in the execution or enforcement of the law. Def.

---

[8] Defendants also take issue with the fact that Plaintiff failed to include his Section 1983 and NJCRA claims in the Notice of Claim. Def. Br. at 16. But constitutional claims are not subject to the TCA. *Purvis v. City of Newark*, No. 16-1830, 2017 WL 1032991, at *4 (D.N.J. Mar. 16, 2017).

Br. at 17. Again, outside of citing to the statutory provisions that create discretionary immunity and immunity based on the good faith execution of the law, Defendants provide no case law to support their argument. And neither statutory provision appears to be applicable. *See, e.g., Costa v. Josey*, 83 N.J. 49, 60 (1980) (explaining that discretionary function immunity is limited to "actual policymaking"); *Wildoner v. Borough of Ramsey*, 162 N.J. 375, 387 (2000) ("The same standard of objective reasonableness that applies in Section 1983 actions also governs questions of good faith arising under the Tort Claims Act."). Accordingly, Defendants' motion is also denied on these grounds.

Finally, Defendants argue that Fort Lee and the Individual Defendants named in their official capacities are immune from Plaintiff's claims for conversion and conspiracy because they are intentional torts. Def. Br. at 18-19; 21. Plaintiff agrees that Fort Lee cannot be vicariously liable for intentional torts committed by an employee. Plf. Opp. at 43 (citing *Hoag v. Brown*, 397 N.J. Super. 34, 54 (App. Div. 2007). As a result, Plaintiff's claims for conversion and for a civil conspiracy are dismissed as to Fort Lee and to the extent that Plaintiff's claims are asserted against any Defendant in his official capacity.

### 2. Failure to State a Claim[9]

#### a. Conversion

Defendants argue that Plaintiff fails to state a claim for conversion. Def. Br. at 19-20. Conversion is the "wrongful exercise of dominion or control over property of another without authorization and to the exclusion of the owner's rights in that property." *City of Atlantic City v. Zemurray St. Capital, LLC*, No. 14-5169, 2017 WL 6638203, at *17 (D.N.J. Dec. 29, 2017) (quoting *Chicago Title Ins. Co. v. Ellis*, 409 N.J. Super. 444, 456 (App. Div. 2009)) (internal

---

[9] Defendants do not seek to dismiss Plaintiff's negligence claim on Rule 12(b)(6) grounds.

18

quotation marks omitted). Under New Jersey law, the elements of conversion are "(1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." *Id.* Although Plaintiff's property was seized pursuant to a valid warrant, Plaintiff has alleged that his criminal case is over. Compl. ¶ 76. Once criminal proceedings are terminated, "the person from whom the property was seized is presumed to have a right to its return." *See United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999); *New Jersey v. One 1986 Subaru*, 120 N.J. 310, 317 (1990) (explaining that "[l]egally seized property may be retained as long as the retention is reasonably related to the government's legitimate need for it"). Thus, Plaintiff sufficiently pleads that he presently has a right to the return of his property. Accordingly, Defendants' motion to dismiss the conversion claim is denied.

### b. Civil Conspiracy

In Count Six, Plaintiff pleads a claim for civil conspiracy. In New Jersey, four elements comprise civil conspiracy: "'(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages.'" *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 390 (D.N.J. 2016) (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus*, 331 F.3d 406, 414 (3d Cir. 2003)); *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (N.J. 2005). Moreover, the underlying unlawful conduct must give rise to an independent right of action. *Banco Popular N. Am.*, 184 N.J. at 178. As discussed with respect to Plaintiff's § 1983 conspiracy claim, Plaintiff pleads sufficient facts to establish that two or more Defendants conspired to unlawfully retain his personal property through the search and that he was damaged as a result of the conspiracy. Accordingly, Defendants' motion is denied on these grounds.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, D.E. 3, is **GRANTED in part and DENIED in part**. With respect to the portions of the Complaint that are dismissed, the dismissal is without prejudice. Plaintiff shall have thirty (30) days to file an amended complaint, which cures the deficiencies noted herein. If Plaintiff does not file an amended pleading, the dismissed claims will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: January 3, 2020

*John Michael Vazquez, U.S.D.J.*